UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MEDIAZAM LLC,

        Plaintiff,

                                      Case No. 20-cv-1381-pp

   v.

VOICES.COM, INC.,

        Defendant.

---

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS (DKT. NO. 10) AND REQUIRING THE PARTIES TO ADVISE THE COURT WHETHER THEY BELIEVE JURISDICTIONAL DISCOVERY IS NECESSARY**

---

On September 4, 2020, the plaintiff filed a complaint alleging patent infringement in violation of 35 U.S.C. §271. Dkt. No. 1 at ¶1. On March 22, 2021, the defendant filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. No. 10. This order denies the motion and requires the parties to notify the court whether they believe jurisdictional discovery is necessary.

I.    **Background**

The complaint arises out of the plaintiff's ownership by assignment of U.S. Patent No. 7,421,391 (the '391 Patent), entitled "System and Method for Voice-Over Asset Management, Search and Presentation." Dkt. No. 1 at ¶7. The plaintiff is a Wisconsin corporation with its principal place of business in

1

Wisconsin. Id. at ¶2. The defendant is a Canadian corporation with its principal place of business in London, Ontario. Id. at ¶3.

In September of 2008, the Patent & Trademark Office issued the '391 Patent. Id. at ¶8. "The '391 Patent is directed to a system and method of managing voiceover talent that improves the promotion, exposure, distribution, selection, and review of voiceover talent." Id. at ¶10. It "disclos[es] and claim[s] a system that permits individual read level profiling and searching, and provid[es] a system and method for searching and selecting a specific read via a 'read profile.'" Id. at ¶13.

The defendant operates a website at the domain "voices.com." Id. at ¶15. That domain "provides an audio read-level search and delivery platform," and indicates that it is the "World's #1 Marketplace for Voice Over." Id. at ¶¶15-16. The plaintiff alleges that voices.com "comprises each and every limitation of at least independent claims 33 and 42 of the '391 Patent." Id. at ¶23. It states that the defendant "became aware of the '391 Patent and its infringement no later than December 19, 2018," when the plaintiff sent the defendant a letter and copy of the patent. Id. at ¶30. Because "the '391 Patent was repeatedly cited against patent applications related to the operation of voices.com that Defendant was pursuing in the United States," the plaintiff concludes that the defendant was aware of the '391 Patent before the December 19, 2018 letter. Id. at ¶31. The defendant "has refused to cease its infringing activities." Id. at ¶32.

The single-count complaint alleges the defendant (1) is "making, using, offering for sale, and/or selling the patented systems and methods of the '391 Patent through its voices.com website" in violation of 35 U.S.C. §271(a), id. at ¶34; (2) "is infringing at least independent claims 33 and 42 of the '391 Patent," id. at ¶35; (3) is engaging in "willful and deliberate" infringement, id. at ¶36; and (4) is directly and proximately causing and will continue to cause the plaintiff substantial injury, damages and irreparable harm "for which Plaintiff has no adequate remedy at law unless Defendant is enjoined from infringing the '391 Patent," id. at ¶37.

The complaint asserts personal jurisdiction under Rule 4(k)(2), contending that its claims arise under federal law, that "on information and belief," the defendant is not subject to jurisdiction in any state's courts of general jurisdiction and that the exercise of jurisdiction over the defendant would comport with due process. Id. at ¶5. It alleges that the defendant has minimum contacts with the United States as a whole and that the defendant "has purposefully directed its infringing activities . . . at United States residents." Id.

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338(a) because this action arises under the patent laws of the United States.

### B. Personal Jurisdiction

#### 1. *Legal Backdrop*

3

In a patent infringement action, Federal Circuit law controls a question of personal jurisdiction because "the jurisdictional issue is intimately involved with the substance of the patent laws." Trimble Inc. v. PerDiemCo LLC, 997 F.3d 1147, 1152 (Fed. Cir. 2021) (quoting Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1016 (Fed. Cir. 2009)).

The Federal Circuit has explained that

> "Rule 4 [of the Federal Rules of Civil Procedure] is the starting point for any persona jurisdiction analysis in federal court." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009) (citing Fed. R. Civ. P. 4 and *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 . . . (1987)). Personal jurisdiction over foreign defendants in federal court typically depends on the existence of sufficient contacts between the defendant and the forum state, requiring the plaintiff to establish that the exercise of personal jurisdiction over the defendant would satisfy the forum state's long-arm statute and comport with constitutional principles of due process such that the defendant would be subject to personal jurisdiction in the courts of the forum state. *See generally* 4A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1069 (3d ed.).

Merial Ltd. v. Cipla, Ltd., 681 F.3d 1283, 1293 (Fed. Cir. 2012).

The Merial court explained, however, that a particular provision of Rule 4—Rule 4(k)(2)—"was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal laws." Id. at 1293-94 (citing Synthes, 563 F.3d at 1295-95; advisory committee notes to the 1993 amendment establishing Rule 4(k)(2)).

Rule 4(k)(2) states:

4

For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

The Merial court explained that Rule 4(k)(2)

approximates a federal long-arm statute, allowing district courts to exercise personal jurisdiction even if the defendant's contacts with the forum state would not support jurisdiction under that state's long-arm statute, as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements.

Merial, 681 F.3d at 1294 (citing Synthes, 563 F.3d at 1293-94. See also,

Genetic Veterinary Sciences, Inc. v. LABOKLIN GmbH & Co. KG, 933 F.3d

1302, 1309 (Fed. Cir. 2019) (quoting Synthes, 563 F.3d at 1293-94).

The second precondition for applying Rule 4(k)(2)—the requirement that

the defendant not be subject to personal jurisdiction in the courts of any

state—is sometimes called the "negation requirement." Merial, 681 F.3d at

1294.

Although the burden of proving personal jurisdiction ordinarily falls on the plaintiff, in the context of Rule 4(k)(2) that general proposition would saddle the plaintiff with an extraordinary challenge in "proving a negative many times over," that is, demonstrating that the defendant is *not* subject to jurisdiction in each of the fifty states. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009). [The Federal Circuit has] therefore adopted a burden-shifting mechanism so that "if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.* at 1415 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001)).

5

Id. Put another way, the Federal Circuit concluded that "the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit." Touchcom, 574 F.3d at 1415.

For an exercise of personal jurisdiction to meet the third precondition of Rule 4(k)(2)—to satisfy the due process requirements—"a nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" LABOKLIN, 933 F.3d at 1309 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 . . . (1945)). When the due process analysis takes place in the context of Rule 4(k)(2), the "forum" is the United States—not the State in which the district court sits. Id. (quoting Synthes, 563 F.3d at 1291, 1295).

2.    *The Parties' Arguments*

In its motion to dismiss, the defendant challenges the second precondition for the application of Rule 4(k)(2): it argues that Rule 4(k)(2) does not apply because it has "designat[ed] the District of Delaware as a suitable forum in which this case could proceed." Dkt. No. 11 at 9 (citing Touchcom, 574 F.3d at 1414). The defendant argues that under Merial, this court does not need to "perform an in-depth jurisdictional analysis under Delaware law." Id. at 12. It asserts that even if the court were required to perform such an analysis, it "has sufficient contacts with Delaware to support the exercise of jurisdiction there." Id. at 13.

6

In support of the motion, the defendant attached an affidavit from Drew Forret, COO and CFO of the defendant. Dkt. No. 12. Forret avers that in 2015 the defendant formed a wholly-owned subsidiary in Delaware; it has two board members and between 2017 and 2019, employed six individuals at any given time. Id. at ¶¶5-6. Forret asserts that the defendant has no offices or employees in Wisconsin, is not registered to conduct business in Wisconsin and does not conduct business in or direct business to Wisconsin. Id. at ¶4.

The defendant also attached an affidavit from Colin Cabral, counsel for the defendant. Dkt. No. 13. Cabral avers that on February 3, 2021,[1] he advised the plaintiff's counsel that he did not believe the Eastern District of Wisconsin had personal jurisdiction over the defendant, informing counsel of the defendant's presence in Delaware. Id. at ¶2. Cabral explains that on February 10, 2022 he followed up with an email, including a screenshot of the Delaware Division of Corporations' page for the defendant. Id. at ¶3. Cabral avers that he offered to accept service on behalf of the defendant in a Delaware proceeding. Id. at ¶6. Generally, Cabral's affidavit asserts that he attempted to convince the plaintiff to dismiss the Wisconsin case and file in Delaware, but that he was unsuccessful.

The plaintiff responds that Rule 4(k)(2) "applies to extend personal jurisdiction in exactly these circumstances"—where a foreign defendant directs

---

[1] The defendant filed the motion to dismiss approximately forty-five days later, on March 22, 2021.

its "infringing website and services" at United States residents. Dkt. No. 15 at

1. The plaintiff says,

> Defendant does not dispute that [the plaintiff's] claim arises under federal law, nor does Defendant contend that the exercise of personal jurisdiction would offend due process. Rather, Defendant bases its entire motion on its unilateral "designation" of Delaware as an alternative forum for this action. It claims, incorrectly, that by "designating" Delaware, Rule 4(k)(2) is rendered inapplicable even if Delaware courts do not *actually* have personal jurisdiction over Defendant as a matter of fact (and in this case, they do not). Essentially, Defendant seeks to twist statements from *ISI International, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548 (7th Cir. 2001), and *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009), into a free pass to override [the plaintiff's] choice of forum and delay its pursuit of its claims. This is not the law, and Defendant's motion to dismiss should be denied.

Id. at 2.

The plaintiff asserts that "the Defendant here is Voices.com Inc. of Ontario, Canada, not its paper subsidiary in Delaware, which is a distinct legal entity that apparently has had no employees since at least 2019." Id. at 3. It asserts that there is "no serious dispute that all the activities alleged by Plaintiff to constitute infringement of the '391 Patent are carried out by Defendant itself," not the subsidiary. Id. The plaintiff goes through, in detail, the contacts that it asserts the defendant has with the United States. Id. The plaintiff also argues that "Defendant previously purposefully availed itself of *this exact district regarding the exact subject matter at issue in this dispute.*" Id. It asserts that in February 2020, the defendant filed suit in this district against the plaintiff, seeking declaratory judgment that the '391 patent was not infringed and invalid, citing Voices.com v. MediaZam LLC, Case No. 20-cv-292

8

(E.D. Wis.). Id. It notes that the defendant later voluntarily dismissed that complaint. Id.

The plaintiff says that when its counsel was contacted by defense counsel about the personal jurisdiction issue, the plaintiff asked "that Defendant provide any evidence it had to show that the infringement alleged in the Complaint was performed by the Delaware entity, rather than the Canadian one." Id. at 4. The plaintiff asserts that the defendant provided "no facts about what actions, if any, were actually performed by the Delaware entity," and that the defendant argued only that "the mere existence of the Delaware entity was sufficient to undermine jurisdiction over the Canadian parent under Rule 4(k)(2)." Id. The plaintiff says that "[u]ltimately, Defendant's counsel never provided any facts to show that the Delaware entity engaged in the infringing activities described in the Complaint or that Delaware could otherwise exercise personal jurisdiction over *the Defendant*—that is, the Canadian entity, not its paper subsidiary." Id. at 5. It argues that the defendant's motion likewise is devoid of any evidence "of regular business or solicitation of business, no persistent course of conduct and no revenues from the provision of its services in Delaware," or evidence that it is involved in the day-to-day operation of the Delaware subsidiary or that the allegedly infringing website has been accessed in Delaware. Id. at 6.

Turning to the defendant's argument that because it has designated Delaware as an alternative forum Rule 4(k)(2) does not apply, the plaintiff insists that to defeat jurisdiction under Rule 4(k)(2), the defendant must

9

demonstrate that the plaintiff actually could have brought suit in the forum the defendant identifies. Id. (citing Touchcom, 574 F.3d at 1415). The plaintiff argues that "to defeat jurisdiction under Rule 4(k)(2), Defendant must show that Delaware courts *actually* had personal jurisdiction over Defendant at the time Plaintiff filed suit," and it argues that the defendant cannot make that showing here. Id. It says that the defendant has both misread Touchcom and ignored "the rationale of *Merial* (as well as numerous district courts' interpretation of that case) in advocating for a rule that allows a defendant to engage in gamesmanship and delay by waiting for a case to be filed and then *post-hoc* 'designating' a preferred forum irrespective of the actual availability of jurisdiction in that forum." Id.

The plaintiff first focuses on words that the Federal Circuit used in Touchcom: that the defendant must designate a forum "in which the plaintiff *could have brought suit.*" Id. at 9 (citing Touchcom, 574 F.3d at 1415). Next, the plaintiff recounts that in Merial, the Federal Circuit "*explicitly approved* of, and 'agree[d] with,' the district court's holding that, because Illinois law would not have supported personal jurisdiction over [defendant Cipla] in 2007, Rule 4(k)(2) had been satisfied 'notwithstanding Cipla's post-judgment designation of an alternative forum.'" Id. at 11 (quoting Merial, 681 F.3d at 1293). The plaintiff quoted the Merial court's reasoning:

> . . . a defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff *could have* brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent. Consistent with that obligation, a

10

defendant does not identify 'a more *appropriate* state' by suggesting an alternative forum with no basis for personal jurisdiction but for its consent. *Id.* at 141 (quoting *ISI*, 256 F.3d at 552) (emphasis added).

Id. at 11 (quoting Merial, 681 F.3d at 1294-95).

The plaintiff listed "[m]any" post-Merial courts which, it says, have "recognized . . . that a defendant cannot circumvent Rule 4(k)(2) simply by 'designating' an alternative forum that in reality lacks personal jurisdiction over it." Id. at 12. It cites Knoll, Inc. v. Senator Int'l Ltd., No. CV 19-4566, 2020 WL 1922780 (E.D. Pa. Apr. 21, 2020), id.; Kraken Sports, Inc. v. Benvenuti, No. CV 19-03233 (TFH), 2021 WL 1124530, at *3 (D.D.C. Mar. 24, 2021), id. at 13; Polar Electro Oy v. Suunto Oy, No. CV 11-1100-GMS, 2017 WL 3713396, at *6 (D. Del. Aug. 29, 2017), id.; Krausz Indus. Ltd. v. Smith-Blair, Inc., 188 F. Supp. 3d 545, 558 (E.D.N.C. 2016), id.; Sunrise Techs., Inc. v. SELC Ireland, Ltd., No. CV 15-11546-NMG, 2016 WL 3360418, at *9 (D. Mass. June 14, 2016), id.; Venmilll Indus., Inc. v. ELM, Inc., 100 F. Supp. 3d 59, 68-69 (D. Mass. 2015), id.; and Am. Wave Machs., Inc. v. Surf Lagoons, Inc., No. 13-CV-3204-CAB-NLS, 2014 WL 104752181, at *8 (S.D. Cal. Nov. 12, 2014), id.

The plaintiff also argues that some of the cases the defendant cited support the plaintiff's position. Id. at 14. And it asserts that the cases the defendant cites which do seem to support the defendant's position "fail entirely to engage with *Touchcom*'s instruction that a defendant may avoid Rule 4(k)(2) only by 'designat[ing] a suitable forum in which the plaintiff *could have brought suit*," 574 F.3d at 1415 (emphasis added), and the *Merial* Court's interpretation

11

of that language, instead baldly stating that after-the-fact consent is enough." Id. at 15.

Given the plaintiff's reasoning, it asserts that the court must analyze whether the plaintiff could have sued the defendant in Delaware. Id. at 17. The plaintiff argues that the defendant has not demonstrated that it meets the requirements of Delaware's long-arm statute, id. at 17-22, and that Delaware has not recognized a "dual jurisdiction" theory, id. at 22-24.

The defendant replies that the plaintiff is attempting to impose an "enhanced burden" on the defendant. Dkt. No. 17 at 6. It asserts that there was "at least 'some independent basis for jurisdiction'" in Delaware at the time the plaintiff filed suit, given the defendant's contacts with Delaware. Id. It argues that the plaintiff is asking this court to decide something that the Federal Circuit has not yet decided—"the general requirements for a defendant to prevent the application of Rule 4(k)(2) by consenting to suit in another jurisdiction." Id.

3.    *Analysis*

In Touchcom, the Federal Circuit examined the contours of Rule 4(k)(2). Touchcom, 574 F.3d at 1403. The plaintiff, a Canadian corporation, filed a legal malpractice suit in Virginia state court against a Canadian intellectual property law firm after the firm unsuccessfully prosecuted the plaintiff's patents. Id. at 1407-08. The defendant removed the case to the United States District Court for the Eastern District of Virginia. Id. at 1408. That court granted the defendant's motion to dismiss for lack of personal jurisdiction,

focusing on the Virginia long-arm statute and concluding that the plaintiff had not pled facts sufficient to meet that statute's requirements. Id. at 1409. The plaintiff appealed to the Federal Circuit. Id.

Because the plaintiff did not appeal the district court's conclusion that it lacked general jurisdiction, the Federal Circuit analyzed only whether the district court erred in concluding that it did not have specific jurisdiction. Id. at 1410. It observed that the district court had analyzed the specific jurisdiction question only under Rule 4(k)(1)(A) (which says that service of process establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located); the district court had not considered "whether Rule 4(k)(2) permitted the exercise of personal jurisdiction" over the defendant. Id. Why? Because the plaintiff had not asked it to. Id. For that reason, the defendant argued on appeal that Touchcom had waived any Rule 4(k)(2) argument. Id. The Federal Circuit disagreed, finding that the plaintiff did not have the opportunity to make that argument due to the way the district court had structured its ruling. Id. at 1410-11.

In addressing the Rule 4(k)(2) argument, the Federal Circuit concluded that the first precondition for personal jurisdiction existed—the court previously had held that a claim of legal malpractice in a patent case "necessarily involved a substantial question of patent law"—over which federal courts have federal question jurisdiction under 28 U.S.C. §1338—"because the claim required the court to determine the scope of the patent claims at issue."

13

Id. at 1413. The court then discussed the history of the second precondition—the "not subject to jurisdiction in any state" precondition. Id. at 1413-14. It explained that prior to the 1993 adoption of Rule 4(k)(2), "a non-resident defendant who did not have 'minimum contacts' with any individual state sufficient to support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states." Id. at 1414. Rule 4(k)(2), the Federal Circuit explained, "was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist." Id. (citing Synthes, 563 F.3d at 1295).

The problem, however, was that when the Touchcom case came before the Federal Circuit, there was a circuit split. "[T]he Fifth, Seventh, Ninth, Eleventh, and DC Circuits" had adopted an approach that allowed a court to use Rule 4(k)(2) to decide whether it had personal jurisdiction over a foreign defendant "unless the defendant name[d] a state in which the suit [could] proceed." Id. In describing this approach, the Touchcom court quoted the Seventh Circuit:

> A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there.... If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

Id. (quoting ISI Int'l, 256 F.3d at 552).

The court explained, however, that the First Circuit had used a different approach, under which "a plaintiff must certify that the defendant is not

14

subject to jurisdiction in any state, at which point the burden shifts to the defendant to refute the plaintiff's certification." Id. (citing United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 41 (1st Cir. 1999)). The court noted that the Fourth Circuit seemed to have adopted that approach, citing Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory," 283 F.3d 208, 215 (4th Cir. 2002).

Opining that the First/Fourth Circuit approach presented "practical difficulties for a plaintiff who prefers to plead in the alternative that the defendant is subject to suit under a state's long-arm statute," id. citing Synthes, 563 F.3d at 1294," the Federal Circuit concluded that "in federal cases, the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit," id. at 1415. The court explained:

> The advisory committee [to the Federal Rules of Civil Procedure] was concerned with defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States. If we were to adopt the First Circuit's requirement that a plaintiff must prove that a defendant was not subject to jurisdiction in any of the fifty states, we would be allowing some defendants to escape jurisdiction due to the excessive burden involved in making such a showing. It is difficult to prove a negative. Furthermore, that approach would not allow plaintiffs to plead jurisdiction in the alternative under Rule 4(k)(1)(A) and Rule 4(k)(2). Requiring a plaintiff to certify that a defendant is not subject to jurisdiction in any state forecloses an argument by the plaintiff that the defendant is subject to jurisdiction in the state in which the court resides. *See Base Metal Trading*, 283 F. 3d at 215 (noting that the First Circuit's certification requirement does not permit litigants to adopt "inconsistent alternate positions in a case"). An approach that forecloses alternative arguments appears to conflict with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set

15

out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single court or defense or in separate ones.").

Id.

The Touchcom court found the Seventh Circuit's approach "more in tune with the purposes behind the enactment of Rule 4(k)(2)" and agreed with the Seventh Circuit that requiring a constitutional analysis for each of the fifty states—as the First Circuit's approach required—was "undesirable and 'eminently avoidable by allocating burdens sensibly.' *ISI Int'l*, 256 F.3d at 552." Id. The Federal Circuit agreed with the Seventh Circuit that "if 'the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).' *Id.*" Id.

The court concluded that the defendant was not subject to personal jurisdiction in Virginia's courts of general jurisdiction and had not named another state in which it would be. Id. It "recognize[d] that because the case was decided on summary judgment and Rule 4(k)(2) was not argued before the district court, there may be evidence of appellees' contacts with states other than Virginia that did not form part of the record." Id. at 1415-16. It held that "[i]f, on remand, the district court determines that appellees are subject to personal jurisdiction in another state, or if the appellees designate such a forum, the district court is welcome to transfer the case as it sees fit." Id. at 1416.

16

The Touchcom court was focused on resolving the circuit split over whether the plaintiff or the defendant should bear the burden of demonstrating that the defendant met the second, "not-subject-to-jurisdiction-in-any-state" precondition of Rule 4(k)(2). But the language of the decision indicates that the court assumed that a defendant would need to do more than simply say "I designate State X" to avoid the federal court of the plaintiff's choice exercising personal jurisdiction under Rule 4(k)(2). The Touchcom court—both in its own words and in quoting the Seventh Circuit—talked about whether the suit "could" proceed in another state. The court used "could" as a modal verb—a verb showing possibility—as well as talking about whether suit would be "possible" in the alternative forum. For the court to talk about whether suit would be "possible" in another forum, it necessarily would have to assume that there could be something that might render suit *not* possible in that forum. The court's final comments about evidence that might be presented to the district court on remand imply that that "something" might be a lack of minimum contacts with the alternative forum.

The court's decision three years later in Merial includes language that supports this conclusion, albeit in what appears to be dicta. In Merial, the Federal Circuit addressed the question of whether a foreign defendant's post-judgment consent to jurisdiction in another forum precluded application of Rule 4(k2). The plaintiffs—Georgia corporations—alleged that the defendant—an Indian corporation—had infringed two of their patents. Merial Limited v. Cipla Limited, No. 3:07-CV-125 (CDL), 2011 WL 2489753 at *1-*3 (M.D. Ga.

2011). The plaintiffs filed a complaint in the United States District Court for the Middle District of Georgia, and when the defendant failed to respond, the court entered default on March 6, 2008. Id. at *1-*2. The plaintiffs subsequently sought relief for alleged violations of the March 6, 2008 order. Id. at *1. The defendant filed a motion to vacate the March 6, 2008 order, arguing that it was not subject to the court's personal jurisdiction at the time of the entry. Id. It asserted limited contacts with the United States, particularly with Georgia. Id. at *8. According to the defendant, the plaintiffs could have brought suit in Illinois: it argued that "general personal jurisdiction could have been exercised over it in Illinois under Illinois law and that it now consent[ed] to submit to jurisdiction in Illinois." Id. at *3, *9. The plaintiffs asserted that the defendant was subject to personal jurisdiction under Rule 4(k)(2). Id. at *8.

The district court observed that the defendant "did not designate a suitable forum in which it could have been sued prior to default judgment being entered against it." Id. "Moreover, it did not designate a suitable substitute forum when it first filed its motion to vacate the default judgment due to lack of personal jurisdiction." Id. Instead, the defendant "first designated the state of Illinois as a suitable substitute forum in its reply brief on its motion to vacate after [the plaintiff] raised Rule 4(k)(2) as a basis for personal jurisdiction for the first time in its response to [the defendant's] motion to vacate." Id. The court concluded that the defendant's "'after the fact' willingness to consent to jurisdiction in Illinois so that it may vacate a previously entered default judgment [was] not sufficient to support a finding

18

that it could have been sued in another state and thus avoid Rule 4(k)(2) jurisdiction." Id. at *9. Under those facts, the district court determined that Rule 4(k)(2) required a finding of whether a court of general jurisdiction in Illinois could have exercised general jurisdiction over the defendant when the plaintiff filed the complaint. Id.

Rejecting the defendant's reliance on Touchcom, the district court stated that Touchcom did not permit a defendant to "avoid personal jurisdiction for default purposes by simply stating after the fact that it would now consent to jurisdiction in a particular state to avoid the default." Id. The district court explained that doing so would "create[] an opportunity for mischief and manipulation of the courts." Id. The court concluded that "the proper inquiry in a case where a defendant seeks to avoid a default judgment due to lack of personal jurisdiction by designating a forum where it is subject to jurisdiction pursuant to Rule 4(k)(2) is to determine whether the defaulted action could have been brought in that designated forum in the first place under that forum's long-arm jurisdiction." Id.

On appeal, the Federal Circuit agreed. The court referenced its decision in Touchcom when agreeing with the district court's determination that the law of the forum the defendant had designated post-default would not have supported personal jurisdiction over the defendant at the time the plaintiff filed suit and thus that "Rule 4(k)(2)'s negation requirement had been satisfied notwithstanding [the defendant's] post-judgment designation of an alternate forum." Merial, 681 F.3d at 1294. It explained that

19

[d]iscussing the negation requirement in *Touchcom*, we stated that a defendant can "avoid the application of [Rule 4(k)(2)] only when it designates a suitable forum in which the plaintiff *could have brought suit*." 574 F.3d at 1415 (emphasis added). Contrary to [the defendant's] contentions, a defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff *could have* brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent. Consistent with that obligation, a defendant does not identify "a more *appropriate* state" by suggesting an alternative forum with no basis for personal jurisdiction but for its consent. *Id.* at 1414 (quoting *ISI*, 256 F.3d at 552) (emphasis added). Absent some independent basis for jurisdiction, neither forum is manifestly more appropriate than the other in such situations, and we see little reason to conclude that the defendant's preference should prevail when choosing among districts of equivalent jurisdictional competence based on equal contacts—or lack thereof—with the defendant.

Id. at 1294-95. The court concluded that a defendant could not avoid the application of Rule 4(k)(2) by consenting to jurisdiction in another state after a default judgment had been entered against it, and explained its concerns about the "gamesmanship" that could result from such a rule, noting that a defaulting party simply could consent to jurisdiction in a new forum to defeat an adverse default judgment. Id. at 1295.

The first three sentences in the paragraph quoted above seem to support the conclusion that the Touchcom court meant the word "could" as a modal verb, signifying that a defendant seeking to avoid the exercise of personal jurisdiction under Rule 4(k)(2) must do more than identify an alternative forum where it would consent to be sued. The last sentence, however, appears to assume that the defendant has no better or worse contacts with the forum in which the plaintiff brought suit than with the alternate forum the defendant

20

selects. What happens if defendant has more contacts with its selected forum than with the forum in which it has been sued?

Of more moment to the dispute between the parties is that in the next sentence, the <u>Merial</u> court stated,

> In any event, we need not decide today the general requirements for a defendant to prevent the application of Rule 4(k)(2) by consenting to suit in another jurisdiction, for it suffices in this case to hold that a defendant . . . challenging a prior default judgment may not do so by naming another forum that would not have had an independent basis for jurisdiction at the time of the original complaint.

<u>Id.</u> at 1295. This language appears to render the language in the prior paragraph dicta; the defendant argues as much, asserting that the <u>Merial</u> decision is bound to its facts and that it is inapplicable where, as here, the defendant did not sit on its hands and wait until after judgment had been entered against it before asserting that it consented to an alternate forum's jurisdiction.

The parties *both* argue that most of district court decisions since <u>Merial</u> support their positions. The Federal Circuit decided <u>Merial</u> on May 31, 2012. The defendant cited seven cases in its opening brief, dkt. no. 11-1, dkt. no. 11 at 10-11. One of those—<u>Early Learning Res., LLC v. Sebel Furniture, Ltd.</u>, No. 10-6335 (NHL) (JS), 2011 WL 4593775 (D.N.J. Sept. 30, 2011) was decided months before <u>Merial</u>. (That court relied on <u>Touchcom</u> to conclude that the defendant's consent to jurisdiction in the alternate forum was sufficient because <u>Touchcom</u> required only that the defendant "name" a suitable "forum" instead of a specific state. <u>Id.</u> at *6.)

With some exceptions, the remaining cases the defendant cited in its initial brief are not particularly helpful to the defendant. In Lambeth Magnetic Structures, LLC v. Toshiba Corp., No. 14-1526, 2017 WL 782892 (W.D. Penn. March 1, 2017), the court analyzed specific jurisdiction under Pennsylvania's long-arm statute and concluded that under the "stream-of-commerce" theory, the plaintiff had failed to make its *prima facie* showing. Id. at *3-*5. At the end of its decision, the court addressed the plaintiff's argument that the defendants were subject to personal jurisdiction "under the Federal long-arm statute." Id. at 5. The Lambeth court did not mention Merial; citing Touchcom, it stated only that two of the defendants had represented that they both "would be amenable to suit" in the forum where the third defendant was located, and thus concluded that it could not properly exercise personal jurisdiction under the federal long-arm statute. Id. at *6.

Nor did the court in Alpha Technology U.S.A. Corp. v. Northern Diary Equip., Ltd., No. 6:17-cv-1000-Orl-31DCI, 2018 WL 501598 (M.D. Fla. Jan. 22, 2018) mention Merial. It, too, cited Touchcom, noted that the defendant had "identified a state where suit would be possible" and had filed "what [the defendant] referred to as a 'stipulation'" agreeing to the transfer of the case to that alternate forum. The court clarified in a footnote that the plaintiff had not actually stipulated to a transfer to the alternate forum. Id. at *5, n.3. Without further analysis, the court concluded, "Rule 4(k)(2) is inapplicable here." Id. at *5.

In <u>Georgetown Rail Equip. Co. v. Tetra Tech Canada, Inc.</u>, No. 6:18-CV-377-RWS-KNM, 2019 WL 5954966 (E.D. Tex. July 17, 2019), the court *did* analyze the Federal Circuit's language in <u>Merial</u>. Interestingly, although the *defendant* cited this case, the <u>Tetra Tech</u> court appears to have read the <u>Merial</u> language as requiring the defendant to show that it could have been subject to suit in the alternate forums. After recounting the paragraph of <u>Merial</u> that the court discussed above, the <u>Tetra Tech</u> court walked through the evidence the defendant had presented of its contacts with each of the proposed alternate forums. It concluded, based on that analysis, that "[w]hile Tetra Tech's consent is not enough to avoid application of Rule 4(k)(2), it appears likely that Illinois and Michigan would have had personal jurisdiction over Tetra Tech at the time of the filing of its Complaint based on its alleged acts of infringement in those fora along with its other contacts." <u>Id.</u> at *8. <u>Tetra Tech</u> appears to support the *plaintiff's* reading of <u>Merial</u>: that to defeat Rule 4(k)(2) personal jurisdiction, a defendant must show that at the time the complaint was filed, the plaintiff could have sued the defendant in the alternate forum based on its contacts with that forum and under that forum's law.

The court in <u>Miller Indus. Towing Equip., Inc. v. NRC Indus.</u>, No. 1:19-CV-00095 REEVES/LEE, 2020 WL 1897171, *6 (E.D. Tenn. April 16, 2020) concluded, as the defendant urges this court to do, that <u>Merial</u> was bound by its facts, observing that in <u>Miller</u>, "there has been no adverse judgment against [the defendant], so it seems to not be engaging in 'gamesmanship' in consenting to suit in New Jersey." The Tennessee court found that the fact that

23

the defendant had stated that it would not contest personal jurisdiction in another forum, combined with the fact that that statement was in response to the plaintiff's "detailed inquiry addressing [whether] [the defendant] would consent to personal jurisdiction in New Jersey," deprived it of personal jurisdiction under Rule 4(k)(2). Id.

The defendant cited Knoll, 2020 WL 1922780, and conceded that this case supports the *plaintiff's* position. In discussing the fact that the defendant had cited to the plaintiff's own pleadings describing the defendant's contacts with two alternate forums, the court stated, "[b]ut consent alone will not do it." Id. at *7. The Knoll court quoted Merial as saying that it is not enough for a defendant to simply name another state and that the defendant must identify a forum "where jurisdiction would have been proper at the time of filing, regardless of consent." Id. (quoting Merial, 681 F.3d at 1294). Based on that reading, the Knoll court analyzed the defendant's contacts with the two designated, alternate forums, and concluded that if the plaintiff had sued the defendant in the Northern District of Illinois, that court "would have properly exercised jurisdiction over [the defendant]." Id. at *9.

The final case the defendant cited in its brief in support of its motion was Fitbit, Inc. v. Koninklijke Philips N.V., 336 F.R.D. 574 (N.D. Cal. 2020). The parties in Fitbit, like the parties here, disputed whether Merial's language about a defendant needing to show more than consent was dicta. Id. at 584. The Fitbit court found that in stating that it "need not decide the general requirements" for a defendant to avoid Rule 4(k)(2) by consenting to suit in

24

another jurisdiction, the <u>Merial</u> court had "expressly declined to apply its reasoning to cases beyond default judgment . . . ." <u>Id.</u> The court concluded that the <u>Merial</u> court's concerns about gamesmanship were not present where the defendant was not trying to avoid litigation or evade jurisdiction in the United States. <u>Id.</u> at 585. The court acknowledged that "[t]his is a close question," but held that

> the deciding factor here is the Federal Circuit's articulation of the primary rationale behind Rule 4(k)(2): "[t]he advisory committee was concerned with defendants escaping jurisdiction in the U.S. federal courts while still having minimum contacts with the United States." <u>Touchcom</u>, 574 F.3d at 1415. [The defendant] has consented to jurisdiction in a federal court and, therefore, answers the overriding concern behind Rule 4(k)(2). Because this is a close question, however, the court does not rest its finding exclusively on whether defendant has met its burden to demonstrate Rule 4(k)(2) does not apply. Rather, even if the court were to agree with [the plaintiff] that Rule 4(k)(2)(A) applies here, plaintiff has failed to meet its burden under Rule 4(k)(2)(B).

<u>Id.</u>

The plaintiff has its own list of cases in support of its argument that a "large number" of courts have decided the issue the way the plaintiff urges this court to do. As with the defendant's list, however, some of the plaintiff's cases are less than helpful because the courts assumed that the language in <u>Merial</u> was controlling, without further analysis. In <u>Surf Lagoons</u>, 2014 WL 10475281, the court did not discuss whether the <u>Merial</u> language was dicta. It simply quoted the paragraph from <u>Merial</u> which this court has quoted, then found that the defendant had not provided any evidence supporting his assertion that he should be subject to personal jurisdiction in the alternate forum. <u>Id.</u> at *8.

Similarly, the court in Venmill, 100 F. Supp. 3d at 68-69, cited a portion of the Merial language, then found that the defendant could not avoid Rule 4(k)(2) personal jurisdiction by designating an alternate forum because it "had not subjected itself to the general jurisdiction of the [alternate forum's] courts at the time this action was filed."

The Massachusetts district court did the same in Sunrise, 2016 WL 3360418, at *9, it quoted the paragraph from Merial, then stated that the defendant had "failed to show that it would have been subject to personal jurisdiction in [the alternate forum] such that [the plaintiff] could have filed its Complaint for Patent Infringement against [the defendant] in that state."

In Krausz, 188 F. Supp. 3d 545, the court quoted Touchcom, stating that "[a] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." Id. at 558 (quoting Touchcom, 574 F.3d at 1414). It then quoted language from Merial: "[T]he defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought a forum where jurisdiction would have been proper at the time of filing, regardless of consent." Id. (quoting Merial, 681 F.3d at 1294). The court concluded that "defendant . . . has identified the Western District of Arkansas as another forum where it was, and is, subject to personal jurisdiction with respect to the claims asserted by plaintiff against defendant . . . . Therefore, because defendant has met its burden of identifying an alternative forum in the United States, personal jurisdiction is not available

under Rule 4(k)(2)." Id. Again, the court assumed that the language from Merial was controlling.

The plaintiff cites Polar Electro Oy, 2017 WL 3713396, but that court was not asked to decide whether Rule 4(k)(2) applied. The case had been remanded from the Federal Circuit for the court to determine whether exercising personal jurisdiction under *Delaware's* long-arm statute would be reasonable and fair. Id. at *1. In discussing whether the plaintiff had an interest in obtaining relief, the court observed that "this is not a situation where [the plaintiff] would be left without a remedy if Delaware could not exercise personal jurisdiction over [the defendant]." Id. at *6. It observed that there was a federal long-arm statute, but opined that "Rule 4(k)(2) is likely to be inapplicable here . . . because [the defendant] consented to jurisdiction in Utah . . . ." Id. Citing Merial, the court stated that "[w]hile [the defendant's] consent is not enough, it appears probable that Utah would have had personal jurisdiction over [the defendant] at the time of filing." Id.

Finally, the plaintiff cited Kraken, 2021 WL 1124530. As in other cases the plaintiff cited, the Kraken court appears to have assumed that the Merial language was controlling law, stating that "[a] defendant is, however, required to go beyond simply naming and consenting to the jurisdiction of another state," and that it must identify a forum where jurisdiction would have been proper regardless of consent. Id. at *3.

This court reads Touchcom to assume that a foreign defendant must do more than simply say, "I designate State X as an alternate forum" in order to

27

avoid application of Rule 4(k)(2). If a foreign defendant need do no more than name an alternate jurisdiction, the <u>Touchcom</u> court would not have used words like "could" and "possible." Although it is dicta, the <u>Merial</u> language says as much. And despite the defendant's assertion to the contrary, most of the decisions cited by the parties assume as much, even if they did not explain why.

The question that the Federal Circuit left open in <u>Merial</u> and apparently has yet to answer is what more the foreign defendant must do to show that it "could" have been sued—that suit was "possible"—in the alternative forum. Must the foreign defendant demonstrate that it had constitutional minimum contacts with the alternative forum at the time the plaintiff filed suit? Must it demonstrate that it was subject to suit in the alternative forum under the forum state's jurisdictional statute? Must it do both? As best the court can tell, the Federal Circuit has not answered this question. But the court disagrees with the defendant that the simple fact that it has identified Delaware as an alternative forum requires dismissal.

### 4.    *The Alternate Forum*

The court has before it an affidavit from the COO/CFO of Voices.com, Inc., the named defendant. Dkt. No. 12. That affidavit avers that the defendant formed a "wholly-owned U.S. subsidiary in the state of Delaware" in 2015 for the purpose of employing individuals in the U.S. <u>Id.</u> at ¶5. It asserts that the name of the subsidiary is the same as the name of the parent—"Voices.com, Inc." <u>Id.</u> The affidavit avers that the defendant employed individuals in the U.S.

28

through the subsidiary from 2017 to 2019 and "expects to do so again in the future." Id. at ¶¶6-7. It says that the defendant files U.S. tax returns for the Delaware subsidiary, pays the Delaware franchise tax, finances the subsidiary's operations, manages the accounting and financial statements within the subsidiary and "sends money to U.S. payroll when the company maintains employees in the United States." Id. at ¶8.

Although the Federal Circuit has not explained what, exactly, a defendant must prove to show that the plaintiff could have brought suit in the alternate forum, this court must make that determination. This single affidavit is insufficient for the court to do so. The parties make assertions in their briefs as if those assertions were jurisdictional facts. The plaintiff argues that Delaware entity is a "paper" subsidiary and is not the defendant. The defendant argues that it has shown an intent to service the Delaware market, but does not explain how having six employees in Delaware at some point between 2017 and 2019—prior to the filing of this lawsuit—evidences that intent.

The court will give the parties the opportunity to advise the court whether they believe jurisdictional discovery is necessary, and if so, how much time they need to conduct that discovery. The court will deny the defendant's motion without prejudice; the defendant may renew the motion once the parties have presented the court with more evidence regarding the defendant's contacts with Delaware.

Finally, the court understands that the plaintiff is frustrated that the defendant waited until the plaintiff had invested significant time and expense

29

in serving the defendant extra-territorially before bringing up the alleged alternate forum. The plaintiff may have reason to be frustrated, but that frustration does not provide a legal basis for the court to exercise personal jurisdiction under Rule 4(k)(2) if the defendant can demonstrate that there is another jurisdiction in which suit would be possible.

## III. Conclusion

The court **DENIES WITHOUT PREJUDICE** the defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Dkt. No. 10.

The court **ORDERS** that by the end of the day on **April 19, 2022**, the parties must each file a statement advising the court whether they believe jurisdictional discovery is necessary and, if so, how much time they believe they need to conduct that discovery.

Dated in Milwaukee, Wisconsin this 31st day of March, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

30